# United States District Court
# for the District of Columbia

**PIPER BRESSANT HOLLOWAY**
**107 Mel Mara Drive**
**Oxon Hill, Maryland 20745**

**Plaintiff**

**v.**

**NATIONAL RAILROAD PASSENGER**
**CORPORATION**
**60 Massachusetts Avenue, N.E.**
**Washington, D.C.  20002**

**Defendant**

Civil Action No.

## COMPLAINT
*(Wrongful termination/Retaliation*
*in violation of the District of Columbia Human Rights Act)*

1.   This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §1332(a). There is complete diversity of citizenship between the parties and the amount at issue exceeds $75,000.

2.   Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2), as the defendant resides in the District of Columbia and all actions giving rise to the claim occurred in this district.

3.   Plaintiff Piper Bressant Holloway ("Ms. Holloway") is an adult who, at all relevant times, resided in the State of Maryland at the address listed in the caption.

4.   Defendant National Railroad Passenger Corporation ("Amtrak") is a corporation that was authorized to be created by the Rail Passenger Service Act, 49 U.S.C. §24101 *et seq.*  At

all times relevant hereto, Amtrak maintained its principal place of business in the District of Columbia at the address listed in the caption.  Amtrak is considered a citizen of the District of Columbia and to maintain its principal place of business therein for the purpose of deciding the original jurisdiction of United States district courts in civil actions, pursuant to 49 U.S.C. §24301(b).

5.     Amtrak hired Ms. Holloway in May 1987 as an onboard service attendant.  For more than 30 years, she held a series of progressively more responsible positions with Amtrak, advancing to the position of project manager.  In 2014, Ms. Holloway transferred to a project manager position in the Sales and Marketing Support Department, supervised by Jeffrey Palmer ("Mr. Palmer").

6.     Ms. Holloway is African American.

7.     Mr. Palmer is white.

8.     Shortly after Mr. Palmer became Ms. Holloway's supervisor, he commenced a pattern of harassment and unwarranted criticism of her job performance, including (but not limited to) negative performance evaluations, solicitation of negative comments about her from others, inaccurate complaints about work errors, and inappropriate criticism of her use of earned personal leave for family matters.

9.     Ms. Holloway served Amtrak well during her 30+ years of employment there and did not deserve the degree or frequency of criticism that Mr. Palmer heaped upon her.  Her projects were completed on time and on or under budget.

2

10.     During her employment in the Sales and Marketing Department under Mr. Palmer's supervision, Ms. Holloway observed that white employees were more highly paid, and held less demanding positions, than African American employees like herself.

11.     During her employment in the Sales and Marketing Department under Mr. Palmer's supervision, Ms. Holloway observed that less-credentialed white employees held positions that were more prestigious and more highly compensated than hers.

12.     Ms. Holloway observed that the criticisms Mr. Palmer and his colleagues leveled at her corresponded with stereotypical misconceptions about African American women, including the belief that such women are overly aggressive and resentful.

13.     Beginning in 2015, Ms. Holloway complained about Mr. Palmer's treatment of her to Amtrak's Human Resources Department and others in positions of authority.   Her complaints were not resolved.   Instead, she began to receive counseling letters and poor performance reviews.

14.     Ms. Holloway also brought her concerns about the obstacles faced by African American women in an organization where management's upper levels were largely populated by white males to the attention of an Amtrak assistant vice president, who agreed that there was a toxic environment at Amtrak and recommended that she bring her concerns to another administrator.

15.     Despite Ms. Holloway's efforts to address her concerns about the treatment of African Americans generally, and her problems with Mr. Palmer in particular, within Amtrak's

3

hierarchy, she continued to experience unwarranted negative feedback and criticisms of her job performance from Mr. Palmer and his workplace associates.

16.    In 2017, Amtrak announced an anticipated corporate reorganization that would include a reduction in force, and invited its employees to apply to participate in a voluntary separation plan ("VSIP") to reduce the number of employees who would eventually be subjected to involuntary separation as part of the reorganization.  Employees who were approved for participation in the VSIP would receive benefits not otherwise available to them, including up to six months' salary at separation and a year's assistance with health insurance premiums.  Employees who elected to retire concurrent with the VSIP would be eligible for their retirement benefits along with the VSIP benefits.

17.    Ms. Holloway was eligible to apply to participate in the VSIP.

18.    On information and belief, almost all employees who applied to participate in the VSIP were approved and received the VSIP benefits.

19.    Due to her age and length of service, Ms. Holloway was eligible for retirement under Amtrak's retirement program in May 2018.

20.    Ms. Holloway asked Mr. Palmer, her immediate supervisor, and Roger Seitzinger, his supervisor, several times about her anticipated status following the reorganization and therefore whether she should apply to participate in the VSIP.  She received only vague answers to the effect that no decision had been made.  Relying upon her superior credentials and performance history, Ms. Holloway decided neither to apply to participate in the VSIP

4

nor to plan for retirement when she became eligible in May 2018, deeming it more likely that the reorganization would target other staff for involuntary separation.

21.    On May 19, 2017, Ms. Holloway filed a charge of discrimination against Amtrak with the United States Equal Employment Opportunity Commission ("EEOC").  The charge, No. 570-2017-01427, alleged that Amtrak, in the person of her supervisor, Mr. Palmer, had discriminated against Ms. Holloway on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended.

22.    On May 23, 2017, the EEOC concluded its investigation of Ms. Holloway's charge and closed its file, including a notification of Ms. Holloway's right to file suit based on the charge.  The EEOC simultaneously notified Amtrak of Ms. Holloway's Charge No. 570-2017-01427 and its determination.

23.    Amtrak received its copy of the EEOC's action on June 1, 2017, including a copy of Ms. Holloway's charge of racial discrimination.

24.    Ms. Holloway filed a complaint for employment discrimination based upon EEOC Charge No. 570-2017-01427 in this Court on August 17, 2017.  The case, which is currently pending, is styled *Piper B. Holloway v. National Railroad Passenger Corporation,* Civil Action No. 17-1695 (EGS).

25.    Amtrak was served with process on December 19, 2017, and answered the complaint on January 9, 2018.  Amtrak denied most of the complaint's allegations and denied liability.

26.     On January 19, 2018, Ms. Holloway was absent from work due to illness.  She was contacted at home and notified that she was being terminated from employment as part of Amtrak's reorganization and that she was being terminated effective with the close of business on January 25, 2018.

27.     Ms. Holloway was the only project manager terminated in her department, and the only credentialed project manager to be terminated.  The retained project managers had inferior credentials and experience to hers, and were predominantly white.

28.     A disproportionate number of similarly situated African American employees were involuntarily separated during the reorganization, while a disproportionate number of white employees were retained.

29.     Ms. Holloway was terminated on account of her race and/or in retaliation for engaging in a protected activity; *i.e.,* complaining about racial discrimination at Amtrak, filing a charge of discrimination with the EEOC, and then filing a civil action based on the EEOC charge. Had Amtrak not been motivated, wholly or partially, by invidious racial discrimination and/or retaliatory animus, Ms. Holloway would not have been selected for involuntary separation in the reorganization.

30.     Alternatively, had Amtrak not been motivated by discriminatory and/or retaliatory animus, it would have responded directly to her repeated inquiries about her status in the reorganization, thus allowing her to apply to participate in the VSIP and/or to plan for early retirement when she became eligible.

6

31.     Amtrak's actions violated the District of Columbia Human Rights Act, D.C. CODE 2001
        (2010 ED.), § 2-1401.11(a)(a) and § 2-1402.61(a), which prohibit discrimination by
        employers on account of race and retaliation by employers against employees in the
        exercise or enjoyment of, or on account of having exercised or enjoyed, the right to
        complain in good faith about perceived discriminatory actions.

32.     As a direct and proximate result of Amtrak's discriminatory and retaliatory actions, Ms.
        Holloway has suffered damages, including lost benefits from losing the opportunity to
        participate in the VSIP, lost income and employment benefits, lost retirement benefits, and
        emotional distress.

        **Wherefore,** based upon the foregoing, plaintiff Piper B. Holloway demands judgment
against the National Railroad Passenger Corporation ("Amtrak") as follows;

A.      Compensatory damages in an amount not less than $500,000, or such amount as may be
        proved at trial;

B.      Pre- and post-judgment interest at the highest legal rate available;

C.      Costs of this action, including reasonable attorney's fees; and

D.      Such other and further relief as the Court deems just and proper.

# Jury demand

Plaintiff demands a jury trial as to all issues so triable.


/s/      *Diana M. Savit*
_____
Diana M. Savit #244970
**SAVIT & SZYMKOWICZ, LLP**
4520 East-West Highway
Suite 700
Bethesda, Maryland 20814
(301) 951-9191
(240) 536-9156 (fax)
dms@savitlaw.com
Attorneys for plaintiff